Ferguson v. Ferguson.

No. 22,676.

HENRY C. FERGUSON, *Appellant*, v. BERTHA E. FERGUSON and JAMES HARAUGHTY, *Appellees.*

SYLLABUS BY THE COURT.

1. EASEMENT—*Roadway—Lands Partitioned—Rights of Allottees.* When lands, which were afterwards severed by partition, were held as a single estate by the ancestral proprietor, no easement was created by his private use of a portion of his land as a roadway for the convenience of himself and family and his licensees.

2. SAME. When an estate is severed by partition without specific reference to easements for rights of way to serve the partitioned lands, easements by implication only arise when they necessarily must do so to give the allottees fair and reasonable enjoyment of their several allotments.

3. SAME—*Closing Roadway—Facts Do Not Warrant An Injunction.* The facts concerning the use of a roadway on and near a half-section line not regularly established nor dedicated as a public highway, and its subsequent partial abandonment because of the construction of a railroad thereon, and its later limited use by the landowner and his family and licensees, and the further fact that the partitioned lands were adequately served by regularly established highways, considered, and held sufficient to require the granting of injunctive relief to prevent the closing of the roadway by the allottee to whom the land had been apportioned when the owner's estate was partitioned among his heirs.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed May 8, 1920. Affirmed.

*C. E. Pile,* and *L. E. Goodrich,* both of Parsons, for the appellant.

*Nelson Case,* of Oswego, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This appeal is from a judgment denying an injunction against the closing of a roadway.

The plaintiff and the principal defendant derived their adjacent and neighboring properties from a common ancestor, Mason Ferguson, who died in 1910. At the time of his death Mason Ferguson owned certain lands in section 33, township 34, range 21 east, in Labette county. His lands were partitioned, and the plaintiff thereby acquired the south half of the

northwest quarter (80 acres), including the farm buildings which were situated near the south side and near the east end of the eighty decreed to him; and the defendant, his sister-in-law, was given adjacent lands in the southwest quarter section, and was also awarded the northwest forty acres in the southeast quarter section. The northeast quarter section was owned by a stranger, Brady, and the northeast forty acres of the southeast quarter was platted as a part of the city of Chetopa.

The roadway in controversy runs eastward on the half-section line, from the plaintiff's farm buildings on the south side of his eighty, between Brady's land on the north and the defendant's land on the south, and it connects with a public street which is also on this half-section line. It is altogether on defendant's land.

In pioneer times in Labette county, this half-section line, east and west, was a traveled highway. In 1871 it was a part of a so-called "Humboldt and Chetopa State Road." In 1872, this part of the road was vacated by the board of county commissioners, but that order did not discontinue its use, as the property was then unfenced and people traveled it as before, when they were so inclined, but also traveled diagonally across the land, as suited their convenience, and with little regard for section or quarter-section lines.

Mason Ferguson acquired these lands about 1885. There was at that time sufficient travel on the half-section line to justify its being considered as a public highway. Shortly thereafter, and the same year, a railway was constructed on and near this half-section line, which rendered it useless as a highway for the general public. Through travel west of Mason Ferguson's house practically ceased. Ferguson, however, and his family and those having business with him continued to travel eastward between his farm residence and Chetopa along and near this old roadway. His children continued to travel along or near the old roadway to the schoolhouse situated northeastward. Some such travel was north of the railway, but part of it was on the south side of the track.

In time, Brady fenced his south line and the railway fenced the north side of its right of way. The two fences formed a sort of fenced lane fifty-six feet wide, which was and is an integral part of defendant's forty acres (N. W. ¼ S. E. ¼) at its

northern limits, but practically isolated from the remainder of the forty by the railway. It is this isolated fifty-six-foot strip which constitutes the disputed roadway. Many years ago a wooden culvert was placed in the roadway at public expense, but it has disappeared. It was also shown that plaintiff had been permitted in times past, before the railway was built, to work out his poll tax on this roadway.

The lands of Mason Ferguson were partitioned in 1913. For some time thereafter the plaintiff continued to use the fifty-six-foot strip as a roadway. His children used it in going to and from school. Plaintiff conducted a horse-breeding establishment on his farm premises, and many persons used this roadway to patronize his business.

The principal defendant and her tenant fenced the roadway. Hence this lawsuit. Defendants prevailed, and plaintiff appeals.

The situation presented is one which perhaps would have justified a different judgment in the trial court, but it is hard for this court to discern a plain palpable error in that judgment.

When Mason Ferguson owned the plaintiff's and defendant's lands, he could not create a public highway by his own use of it. Moreover, all the uses which an easement might supply were then embraced in his general proprietorship. Nor would a public way to his house be created by the use of this strip of land by his neighbors who came to his premises. They were merely his licensees. (*Sexton v. Holt,* 91 Kan. 26, 136 Pac. 934.) It is not shown that Mason Ferguson dedicated this disputed strip of land to public use. True, people used it, but they did not use it exclusively. There was evidence that the travel eastward from the Mason Ferguson premises was on the south side of the railway as well as on the north side. One witness testified that he sometimes had "gone through gates" to reach the Ferguson place. It was also shown that such travel as there was from the Ferguson place eastward was over several different tracks, and was not confined to this fifty-six-foot strip. One witness said the accustomed travel was "somewhere near the half-section line." Another witness testified: "In the early days the east part of the road was probably a little south but very near the place it now is." Another witness testified:

"While [Mason] Ferguson owned it we crossed the railroad right at this house and went down on the south side of the railroad." "When we built the railroad we put the road south of the right of way and let it stay there."

In view of this evidence it cannot be said that the fifty-six-foot strip on the north side of defendant's forty acres had been dedicated by Mason Ferguson as a public highway. It was simply one of a number of ways of convenience for himself and family and those who had dealings with him.

After the lands of Mason Ferguson were partitioned, there was no sufficient showing of use and of duration of use of this fifty-six-foot strip to create a public highway on defendant's land by prescription. And upon partition, it is only ways of necessity and not mere ways of convenience that pass to the individual tracts carved out of the original estate. A public road skirts plaintiff's land on the west, which gives him access north and south, and eastward and westward at the regular section lines. When an estate is severed without specific reference to easements for rights of way, easements by implication over the apportioned lands in favor of the other allottees only arise where they necessarily and obviously must arise to give the allottees fair enjoyment of their several allotments. (*Mitchell v. Seipel,* 53 Md. 251; *Grant v. Chase & al.,* 17 Mass. 443, 447; *Carbrey v. Willis,* 89 Mass. 364; *Nichols v. Luce,* 41 Mass. 102; *Kelly v. Dunning,* 43 N. J. Eq. 62; *Parsons v. Johnson et al.,* 68 N. Y. 62; 14 Cyc. 1168 *et seq.*)

It seems needless to consider whether the present controversy was *res judicata* in the partition proceedings, as the matters above discussed make it conclusive that the judgment cannot be disturbed.

Affirmed.