No. 31,952

CLYDE JOHNSTON, *Appellant,* v. THE CITY OF KINGMAN et al., *Appellees.*

(39 P. 2d 924)

Opinion filed January 26, 1935.

*H. E. Walter,* of Kingman, for the appellant.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to enjoin the governing body of a city from diverting the waters of a stream. Judgment was for defendants. Plaintiff appeals.

The Ninnescah river flows eastward through the city of Kingman. In 1881 the Ninnescah Water and Power Company condemned land for the right of way and constructed a millrace. This millrace commenced west of the city of Kingman and ran in a southeasterly direction, roughly paralleling the river to a point a little over a mile east of the city, where it discharged back into the river. At the point where the millrace discharged back into the river a holder of the title from the corporation in 1882 built a flour mill, which was operated by means of this millrace. At the point where the millrace commenced a dam was built in the river large enough to divert sufficient water from the river down the millrace to operate the flour mill. At a point about midway between the intake of the millrace and the flour mill the millrace almost touched the channel of the river. At this point the company built a gate on the side of the millrace that was next to the river and arranged it so that by raising or lowering this gate the height of the water in the millrace could be regulated. For about twenty years this dam in the Ninnescah, the millrace and the flour mill were all owned and operated by the same man. Later, after the mill had burned down, a power plant was built on the same site, and for about fifteen years electric current was furnished to the city of Kingman. After the city of Kingman installed a municipal power plant, power from the plant on the river was transmitted to the city, where it was used to operate a mill. In 1923, during a flood, the dam in the river at the intake of the millrace was washed away, and from that time until the happening of events which brought on this action the water ran down the race only intermittently, when the river was high on account of rains.

Some time prior to 1923 Charles S. Gill became the owner of the right of way of the millrace and all of the ground condemned by the corporation in the first place, together with the building on the old millsite at the lower end of the race. In 1928 Charles S. Gill and wife, by a quit-claim deed, conveyed to the city the upper end of the millrace from the point where the waters of the Ninnescah are directed into it to a point near the east corporate limits of the city. The deed contained the following language:

"Also the millrace, together with the rights of way belonging to the Ninnescah Roller Mill under former grants in so far as they apply to tracts west of the north-and-south half-section line in section five (5), township twenty-eight (28), range seven (7), west of the sixth P. M., the same being the same right of way condemned heretofore by legal proceedings by the Ninnescah Water and Power Company, said race at the time of said condemnation being

through and across the lands of S. Turner, W. D. Sugar, South Addition to the city of Kingman, Kansas, A. D. Turner, H. L. Ball, Joseph L. Roberts and P. Buffington, together with all dams, wasteways, sluices and all appendages and properties, belonging to said race in so far as they apply to the property west of the north-and-south half-section line of said section, five (5).

"The intention being hereby to grant, convey and quitclaim unto party of the second part, its successors and assigns, all of the millrace property and contiguous lands lying within the corporate limits of the city of Kingman, Kan., and west of the center line of section five (5), township twenty-eight (28), range seven (7), west of the sixth P. M., together with any and other rights or easements which we now have within the corporate limits of said city not heretofore conveyed or contracted upon."

The point where the waste gate was installed in the millrace is located at about the east edge of the portion of the millrace that was acquired by the city. Shortly after the city acquired title to the upper portion of the right of way of the raceway, and near the point where the waste gate was located in the north bank of the raceway near the east corporate limits of the city of Kingman, and near the east edge of the grant to the city of Kingman, the city tore away the waste gate and built a dam across the entire width of the race and raised the level of the water in the race, widened out its banks and added that portion which they owned to their park system. In building the dam and structure the city tore away and removed the north bank of the millrace, this being the bank next to the river below the point where they erected the dam, thus diverting the water after it passed over the dam back into the river and placed the water in such a way it could not and did not flow on down the raceway to the millsite.

Shortly after the city acquired title to the upper portion of the millrace the plaintiff acquired title to the lower portion of it east of the city limits and to the land belonging to Gill at the millsite. Desiring to use the water that flowed down the raceway the plaintiff demanded of the city that it restore the north bank of the race below the dam so the water might flow over the dam in the race and on down the race to the point where the water could be utilized for the operation of a mill on the land of this plaintiff. The city refused, and this action is the result.

The petition alleged facts about as they have been stated here. The defendants demurred on the ground that the petition did not state a cause of action. The demurrer was sustained. Hence this appeal.

It is the contention of plaintiff that the millrace, having been used

by the owners of the millsite for more than forty years, became to all intents and purposes a natural stream, and that all the rights of a riparian owner attached to it, and that the use of the water was adverse and the right to use became a right acquired by prescription and this right passed to plaintiff when he acquired the lower end of the race. It is further contended by plaintiff that this millrace became an ancient water right and that by reason of the provisions of R. S. 17-618 could be disturbed or destroyed by the city of Kingman only by condemnation proceedings.

It will be noted that the party from whom plaintiff acquired his title to the lower portion of the millrace and the millsite is the same one from whom defendant acquired the upper portion of the millrace. It is also worthy of note that plaintiff acquired his title after defendant had acquired its title, and the conveyance to defendant conveyed all rights and easements which grantor then had.

The theory of plaintiff is that his land is the dominant estate, and that water having flowed over the land owned by defendant for use at the millsite of plaintiff, the defendant's land is the servient estate. The trouble with that theory is that there was no servient or dominant estate here. From the time when the condemnation proceedings were first had until the upper part of the millrace was conveyed to defendant all the property in question belonged to one person. There was unity of ownership of the dominant and servient estates. This question was considered in *Gayetty v. Bethune,* 14 Mass. 49. There a right of way across land was claimed by right of prescription. The court held that it was impossible for a man to obtain an easement over his own ground. The court said:

"Prescription, in the ancient sense of the word, is founded upon the supposition of a grant; and therefore it is, that the use or possession, on which it is founded, must be adverse, or of a nature to indicate that it is claimed as a right, and not the effect of indulgence, or of any compact, short of a grant." (p. 52.)

To the same effect is *Vossen v. Dautel,* 116 Mo. 379. There the court said:

"It is to be observed that no man can acquire an easement in his own lands." (See, also, *Clark v. Allaman,* 71 Kan. 206, 245, 80 Pac. 571.)

The reason for this rule is that the obtaining of a right by prescription is based on the theory that the person claiming the right claimed it all the time as a right against the rights of others. If there was a situation at any time while the right by prescription

was being acquired when it appeared that the owner of the servient estate was permitting the use, then at that time the reason upon which the right is based falls. The reasoning applies with peculiar force here. There never has been a time since the millrace was built that the owner of the lower part of this millrace and the millsite took the position he was using the water that came down the race against the rights of any person. How could such a thing be true? There was no person except the owner of the millsite who claimed any rights in the millrace until the conveyance of the upper part to the city. Hence the use of the water and the millrace was never adverse. There was no one for it to be adverse to. Plaintiff makes an argument that the city should have condemned this property under the provisions of R. S. 17-618. That argument is not good, for the reason the city could have acquired nothing by condemnation that it did not already have by conveyance. Since all these facts appear in the petition, we have reached the conclusion that the demurrer of defendant was properly sustained.

The judgment of the trial court is affirmed.