## No. 33,908

JAMES W. VAN SANDT, *Appellant,* v. LOUISE H. ROYSTER, MARGARET ROYSTER, WILLIAM M. GRAY and LAEL BAILEY GRAY, *Appellees.*

(83 P. 2d 698)

Opinion filed November 5, 1938.

*Guy Lamer* and *DeWitt M. Stiles,* both of Iola, for the appellant.

*T. R. Evans, B. M. Dunham* and *James A. Allen,* all of Chanute, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: The action was brought to enjoin defendants from using and maintaining an underground lateral sewer drain through and across plaintiff's land. The case was tried by the court, judgment was rendered in favor of defendants, and plaintiff appeals.

In the city of Chanute, Highland avenue, running north and south, intersects Tenth street running east and west. In the early part

of 1904 Laura A. J. Bailey was the owner of a plot of ground lying east of Highland avenue and south of Tenth street. Running east from Highland avenue and facing north on Tenth street the lots are numbered respectively, 19, 20 and 4. In 1904 the residence of Mrs. Bailey was on lot 4 on the east part of her land.

In the latter part of 1903 or the early part of 1904, the city of Chanute constructed a public sewer in Highland avenue, west of lot 19. About the same time a private lateral drain was constructed from the Bailey residence on lot 4 running in a westerly direction through and across lots 20 and 19 to the public sewer.

On January 15, 1904, Laura A. J. Bailey conveyed lot 19 to John J. Jones, by general warranty deed with usual covenants against encumbrances, and containing no exceptions or reservations. Jones erected a dwelling on the north part of the lot. In 1920 Jones conveyed the north 156 feet of lot 19 to Carl D. Reynolds; in 1924 Reynolds conveyed to the plaintiff, who has owned and occupied the premises since that time.

In 1904 Laura A. J. Bailey conveyed lot 20 to one Murphy, who built a house thereon, and by mesne conveyances the title passed to the defendant, Louise H. Royster. The deed to Murphy was a general warranty deed without exceptions or reservations. The defendant Gray has succeeded to the title to lot 4 upon which the old Bailey home stood at the time Laura A. J. Bailey sold lots 19 and 20.

In March, 1936, plaintiff discovered his basement flooded with sewage and filth to a depth of six or eight inches, and upon investigation he found for the first time that there existed on and across his property a sewer drain extending in an easterly direction across the property of Royster to the property of Gray. The refusal of defendants to cease draining and discharging their sewage across plaintiff's land resulted in this lawsuit.

The trial court returned findings of fact, from which we quote:

"1. The plaintiff and the defendants Louise Royster and Lael Bailey Gray are the present owners, respectively, of properties adjoining one another in Bailey's addition to the city of Chanute, Kan., on each of which properties there is a residence, the plaintiff being the owner of part of lot 19, the defendant Louise Royster being the owner of part of lot 20, and the defendant Lael Bailey Gray being the owner of lot 4, part of original lot 9 in block 3, in said addition. All of said properties front to the north on Tenth street. Plaintiff's property is farthest west. Immediately adjoining it on the east is the Royster property and immediately adjoining the Royster property on the

east is the Gray property. Immediately adjoining plaintiff's property on the west is Highland avenue, a public street.

"2. Laura A. J. Bailey was originally the owner of all the above-described properties and other land adjacent thereto, and prior to the summer of 1904 the only residence or dwelling house on any of said properties was the house on the property farthest east, namely lot 4, being the property now owned by Gray.

"3. On January 15, 1904, Laura A. J. Bailey sold to John J. Jones said lot 19 (and other land) and conveyed same to him by general warranty deed, with usual covenants against encumbrances, and containing no exceptions or reservations whatsoever. The deed was duly recorded. John Jones erected a dwelling house on the north 156 feet of lot 19. On January 12, 1920, John Jones conveyed the north 156 feet of lot 19 to Carl D. Reynolds by general warranty deed containing usual convenants against encumbrances, and containing no exceptions or reservations whatsoever, but also included the 'appurtenances thereunto belonging,' etc. This deed was duly recorded. On November 7, 1924, Carl D. Reynolds conveyed said last-described property to plaintiff by general warranty deed with usual covenants against encumbrances excepting only a mortgage thereon, but also including the 'appurtenances thereunto belonging,' etc. Plaintiff has owned and occupied said property ever since.

"4. On April 14, 1904, Laura A. J. Bailey conveyed part of lot 20 to W. P. Murphy, who erected a dwelling house on the lot and later sold that property to W. E. Royster, conveying the same by general warranty deed without reservation, but including the 'appurtenances thereunto belonging,' etc., and from said W. E. Royster the property passed to the defendant Louise Royster.

"5. The defendant, Lael Bailey Gray, has succeeded to the title to lot 4 upon which the old Bailey house stood at the time Laura Bailey sold the other lots.

"6. In the latter part of the year 1903 or the early part of 1904 the city of Chanute extended its public sewer system and constructed a public sewer running north and south in Highland avenue immediately west of lot 19 above mentioned. When this public sewer was constructed a private sewer was laid from the old Bailey house on lot 4 in a general westerly direction across lots 20 and 19 to the public sewer in Highland avenue, and the old Bailey house was connected through this private sewer to the public sewer. When the houses were erected on lot 19 and lot 20, respectively, these houses were connected with this private sewer, and the same has been in continuous use for all of said properties ever since.

"7. At the time Laura A. J. Bailey sold lot 19 to Jones she owned lot 18, which lies south of lots 19 and 20, extends in an east-and-west direction from the west boundary of lot 4 (or original lot 9) near the southwest corner thereof to Highland avenue. The east boundary of lot 18 is contiguous with the west boundary of original lot 9 for a distance of at least twenty feet north from the southwest corner of said lot 9. Lot 18 was not sold by Mrs. Bailey until November, 1905.

"8. There is not now and was not at the time plaintiff purchased his property anything on record in the office of the register of deeds of the county pertaining to the private sewer above referred to.

"9. At the time plaintiff purchased his property he and his wife made a careful and thorough inspection of the same, knew that the house they were buying was equipped with modern plumbing and knew that the plumbing had to drain into a sewer, but otherwise had no further knowledge of the existence of said lateral sewer.

"10. That the lateral sewer in controversy was installed prior to the sale of the property by Mrs. Laura A. J. Bailey to John J. Jones on January 15, 1904; but if not, the said lateral sewer certainly was installed shortly after the sale to John J. Jones and with the knowledge and acquiescence of said John J. Jones, and that the said John J. Jones paid the said Mrs. Laura A. J. Bailey one third of the cost of the installation of the said sewer.

"11. That all of the original owners of the three properties in controversy, to wit, Laura A. J. Bailey, John J. Jones and W. P. Murphy, had notice and knowledge of the existence of the lateral sewer in controversy, and all acquiesced in the use of the sewer by all parties, and the use of the sewer by the said parties and their successors in interest has been continuous from the time of its installation to the present time—a period of more than thirty-three years —and has been a mutual enterprise, and the said lateral sewer was an appurtenance to the properties belonging to plaintiff and Louise Royster, and the same is necessary to the reasonable use and enjoyment of the said properties of the parties."

The drain pipe in the lateral sewer was several feet under the surface of the ground. There was nothing visible on the ground in the rear of the houses to indicate the existence of the drain or the connection of the drain with the houses.

As a conclusion of law the court found that "an appurtenant easement existed in the said lateral sewer as to all three of the properties involved in the controversy here." Plaintiff's prayer for relief was denied and it was decreed that plaintiff be restrained from interfering in any way with the lateral drain or sewer.

Plaintiff contends that the evidence fails to show that an easement was ever created in his land, and, assuming there was an easement created as alleged, that he took the premises free from the burden of the easement for the reason that he was a bona fide purchaser, without notice, actual or constructive.

Defendants contend: (1) That an easement was created by implied reservation on the severance of the servient from the dominant estate of the deed from Mrs. Bailey to Jones; (2) there is a valid easement by prescription.

In finding No. 11, the court found that the lateral sewer "was an appurtenance to the properties belonging to plaintiff and Louise Royster, and the same is necessary to the reasonable use and enjoyment of the said properties of the parties."

As an easement is an interest which a person has in land in the possession of another, it necessarily follows that an owner cannot have an easement in his own land. (*Johnston v. City of Kingman,* 141 Kan. 131, 39 P. 2d 924; *Ferguson v. Ferguson,* 106 Kan. 823, 189 Pac. 925.)

However, an owner may make use of one part of his land for the benefit of another part, and this is very frequently spoken of as a quasi easement.

"When one thus utilizes part of his land for the benefit of another part, it is frequently said that a quasi easement exists, the part of the land which is benefited being referred to as the 'quasi dominant tenement' and the part which is utilized for the benefit of the other part being referred to as the 'quasi servient tenement.' The so-called quasi easement is evidently not a legal relation in any sense, but the expression is a convenient one to describe the particular mode in which the owner utilizes one part of the land for the benefit of the other.

"If the owner of land, one part of which is subject to a quasi easement in favor of another part, conveys the quasi dominant tenement, an easement corresponding to such quasi easement is ordinarily regarded as thereby vested in the grantee of the land, provided, it is said, the quasi easement is of an apparent continuous and necessary character." (2 Tiffany on Real Property, 2d ed., 1272, 1273.)

Following the famous case of *Pyer v. Carter,* 1 Hurl & N. 916, some of the English cases and many early American cases held that upon the transfer of the quasi-servient tenement there was an implied reservation of an easement in favor of the conveyor. Under the doctrine of *Pyer v. Carter,* no distinction was made between an implied reservation and an implied grant.

The case, however, was overthrown in England by *Suffield v. Brown,* 4 De G. J. & S. 185, and *Wheeldon v. Burrows,* L. R. 12 Ch. D. 31. In the former case the court said:

"It seems to me more reasonable and just to hold that if the grantor intends to reserve any right over the property granted, it is his duty to reserve it expressly in the grant, rather than to limit and cut down the operation of a plain grant (which is not pretended to be otherwise than in conformity with the contract between the parties), by the fiction of an implied reservation. If this plain rule be adhered to, men will know what they have to trust, and will place confidence in the language of their contracts and assurances. . . . But I cannot agree that the grantor can derogate from his own absolute grant so as to claim rights over the thing granted, even if they were at the time of the grant continuous and apparent easements enjoyed by an adjoining tenement which remains the property of him the grantor." (pp. 190, 194.)

Many American courts of high standing assert that the rule regarding implied grants and implied reservations is reciprocal and that the rule applies with equal force and in like circumstances to both grants and reservations. (Washburn on Easements, 4th ed. 75; *Miller v. Skaggs,* 79 W. Va. 645, 91 S. E. 536, Ann. Cas. 1918 D. 929.)

On the other hand, perhaps a majority of the cases hold that in order to establish an easement by implied reservation in favor of the grantor the easement must be one of strict necessity, even when there was an existing drain or sewer at the time of the severance.

Thus in *Howley v. Chaffee et al.,* 88 Vt. 468, 474, 93 Atl. 120, L. R. A. 1915 D. 1010, the court said:

"With the character and extent of implied grants, we now have nothing to do. We are here only concerned with determining the circumstances which will give rise to an implied reservation. On this precise question the authorities are in conflict. Courts of high standing assert that the rule regarding implied grants and implied reservation of 'visible servitudes' is reciprocal, and that it applies with equal force and in like circumstances to both grants and reservations. But upon a careful consideration of the whole subject, studied in the light of the many cases in which it is discussed, we are convinced that there is a clear distinction between implied grants and implied reservations, and that this distinction is well founded in principle and well supported by authority. It is apparent that no question of public policy is here involved, as we have seen is the case where a way of necessity is involved. To say that a grantor reserves to himself something out of the property granted, wholly by implication, not only offends the rule that one shall not derogate from his own grant, but conflicts with the grantor's language in the conveyance, which, by the rule, is to be taken against him, and is wholly inconsistent with the theory on which our registry laws are based. If such an illogical result is to follow an absolute grant, it must be by virtue of some legal rule of compelling force. The correct rule is, we think, that where, as here, one grants a parcel of land by metes and bounds, by a deed containing full covenants of warranty and without any express reservation, there can be no reservation by implication, unless the easement claimed is one of strict necessity, within the meaning of that term as explained in *Dee v. King,* 73 Vt. 375."

See, also, *Brown v. Fuller,* 165 Mich. 162, 130 N. W. 621, 33 L. R. A., n. s. 459, Ann. Cas. 1912 C 853. The cases are collected in 58 A. L. R. 837.

We are inclined to the view that the circumstance that the claimant of the easement is the grantor instead of the grantee, is but one of many factors to be considered in determining whether an easement will arise by implication. An easement created by implication arises as an inference of the intentions of the parties to a con-

veyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance. The easement may arise in favor of the conveyor or the conveyee. In the Restatement of Property, tentative draft No. 8, section 28, the factors determining the implication of an easement are stated:

"SEC. 28. FACTORS DETERMINING IMPLICATION OF EASEMENTS OR PROFITS. In determining whether the circumstances under which a conveyance of land is made imply an easement or a profit, the following factors are important: (a) whether the claimant is the conveyor or the conveyee, (b) the terms of the conveyance, (c) the consideration given for it, (d) whether the claim is made against a simultaneous conveyee, (e) the extent of necessity of the easement or the profit to the claimant, (f) whether reciprocal benefits result to the conveyor and the conveyee, (g) the manner in which the land was used prior to its conveyance, and (h) the extent to which the manner of prior use was or might have been known to the parties."

Comment j, under the same section, reads:

"The extent to which the manner of prior use was or might have been known to the parties. The effect of the prior use as a circumstance in implying, upon a severance of possession by conveyance, an easement or a profit results from an inference as to the intention of the parties. To draw such an inference, the prior use must have been known to the parties at the time of the conveyance, or, at least, have been within the possibility of their knowledge at the time. Each party to a conveyance is bound not merely to what he intended, but also to what he might reasonably have foreseen the other party to the conveyance expected. Parties to a conveyance may, therefore, be assumed to intend the continuance of uses known to them which are in a considerable degree necessary to the continued usefulness of the land. Also they will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation. The degree of necessity required to imply an easement in favor of the conveyor is greater than that required in the case of the conveyee (see comment b). Yet, even in the case of the conveyor, the implication from necessity will be aided by a previous use made apparent by the physical adaptation of the premises to it."

Illustrations:

"9. A is the owner of two adjacent tracts of land, Blackacre and Whiteacre. Blackacre has on it a dwelling house. Whiteacre is unimproved. Drainage from the house to a public sewer is across Whiteacre. This fact is unknown to A, who purchased the two tracts with the house already built. By reasonable effort, A might discover the manner of drainage and the location of the drain. A sells Blackacre to B, who has been informed as to the manner of drainage and the location of the drain and assumes that A is aware of it. There is created by implication an easement of drainage in favor of B across Whiteacre.

"10. Same facts as in illustration 9, except that both A and B are unaware

of the manner of drainage and the location of the drain. However, each had reasonable opportunity to learn of such facts. A holding that there is created by implication an easement of drainage in favor of B across Whiteacre is proper."

At the time John J. Jones purchased lot 19 he was aware of the lateral sewer, and knew that it was installed for the benefit of the lots owned by Mrs. Bailey, the common owner. The easement was necessary to the comfortable enjoyment of the grantor's property. If land may be used without an easement, but cannot be used without disproportionate effort and expense, an easement may still be implied in favor of either the grantor or grantee on the basis of necessity alone. This is the situation as found by the trial court.

Neither can it be claimed that plaintiff purchased without notice. At the time plaintiff purchased the property he and his wife made a careful and thorough inspection of the property. They knew the house was equipped with modern plumbing and that the plumbing had to drain into a sewer. Under the facts as found by the court, we think the purchaser was charged with notice of the lateral sewer. It was an apparent easement as that term is used in the books. (*Wiesel v. Smira,* 49 R. I. 246, 142 Atl. 148, 58 A. L. R. 818; 19 C. J. 868.)

The author of the annotation on Easements by Implication in 58 A. L. R. 832, states the rule as follows:

"While there is some conflict of authority as to whether existing drains, pipes, and sewers may be properly characterized as apparent, within the rule as to apparent or visible easements, the majority of the cases which have considered the question have taken the view that appearance and visibility are not synonymous, and that the fact that the pipe, sewer, or drain may be hidden underground does not negative its character as an apparent condition; at least, where the appliances connected with and leading to it are obvious."

As we are clear that an easement by implication was created under the facts as found by the trial court, it is unnecessary to discuss the question of prescription.

The judgment is affirmed.

HARVEY, J.: Concurs in the order of affirmance, but not in all that is said in the opinion.

WEDELL, J., not sitting.