No. 38,729

A. B. CHINN, *Appellee,* v. SYLVIA STRAIT and MARVIN STRAIT,
*Appellants.*

(250 P. 2d 806)

Opinion filed
December 6, 1952.

*Riley W. MacGregor,* of Medicine Lodge, argued the cause, and *Vernon F. Coss* and *John W. MacGregor,* both of Medicine Lodge, were with him on the briefs for the appellants.

*Richard Barrett,* of Pratt, argued the cause, and *George Barrett,* of Pratt, was with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to enjoin obstruction of a claimed easement.

In his petition, filed September 4, 1951, the plaintiff alleged that the defendants were the owners of the west half of the west half of sec. 30, twp. 29, s. of rg. 14 w., and that plaintiff and his predecessors were and are the owners of the southeast quarter of sec. 25, twp. 29 s. of rg. 15 w. (which is immediately to the west of the south half of defendants' land) and by the continuous, exclusive, uninterrupted and adverse use for more than forty years had acquired an easement and right of way therefrom over the adjoining land of the defendants to the county road to pass and repass on foot, with horses, wagons, machinery and motor vehicles freely at all times, and that

defendants, with knowledge and notice of his right, about August 15, 1951, wrongfully obstructed the right of way by tearing down fences, tearing up land and trees and by building fences across the right of way, to his damage in the sum of $1,000; that the acts complained of were maliciously done and he asked punitive damages of $5,000 and he prayed for an order compelling the defendants to remove the obstructions, to restore the right of way, for a permanent injunction against obstruction of the right of way and for money damages.

The answer of the defendants contained a general demurrer, an admission they owned the real estate and a general denial. The record, as abstracted, does not disclose any ruling on the demurrer.

A trial was had by the court. At the conclusion of the plaintiff's evidence, defendants' demurrer thereto was overruled. At the conclusion of the defendants' evidence, the court found that plaintiff had an easement over defendants' lands for ingress and egress from his land and that he was entitled to damages in the sum of $10, and it rendered judgment that plaintiff was entitled to hold and use an easement or right of way across the north twenty feet of the west half of the southwest quarter of section 30 aforesaid, for the purpose of providing a way of ingress and egress from the southeast quarter of section 25 aforesaid to the county road on the east side of the west half of the southwest quarter of section 30; that plaintiff have judgment against defendants for $10 and that defendants be permanently enjoined from obstructing the right of way or in any manner hindering plaintiff from free and lawful use of it. Defendants' motion for a new trial was denied and in due time they appealed from the judgment and all rulings.

Appellee has filed a motion that the appeal be dismissed, alleging that defendants acquiesced in the judgment by removing the fences and obstructions and opening the easement and right of way to appellee's use. The motion is supported by the affidavit of appellee, Chinn. In opposition two affidavits have been filed. One is by appellant, Sylvia Strait, asserting that she is the sole and absolute owner of the real estate over which the claimed easement passes and that she at no time authorized or directed anyone to remove any obstructions from the claimed right of way or to open the purported right of way so as to give free ingress and egress. The other affidavit is by Marvin Strait, who states he is a tenant on the land, and that he at no time removed any obstruction in order to give Chinn a free right of way and that the only removal was that

he might cultivate the land, to accommodate terracing and farm work and the free use of the land for farm purposes. Without attempting to determine such dispute of facts as may be presented in the affidavits, it is clear that Sylvia Strait, whom the record discloses is the owner of the lands sought to be subjected to the easement, has done nothing that indicates acquiescence in the judgment. The appeal will be entertained.

Appellants' specifications of error cover the trial court's ruling on their demurrer to the evidence, the finding that appellee could and did acquire title by adverse possession from his father while a tenant of his father, in rendering judgment for the appellee, and in denying their motion for a new trial. Consideration thereof requires a summation of the evidence, although before that is done we direct attention to certain facts which were stipulated or otherwise admitted.

John Chinn, father of appellee, acquired title to the southeast quarter of section 25 in 1905. Although not expressly stated, John Chinn mortgaged this land and the mortgage was foreclosed. In July, 1936, a sheriff's deed was made and delivered to Plymouth Guaranty Savings Bank and recorded July 18, 1936. A. B. Chinn, appellee, testified he contracted with Warren Mortgage Company, whose source of title is not shown, to purchase the quarter section in 1936, the month and day not being stated, and that later a deed was delivered to him. In a memorandum opinion the trial court stated that A. B. Chinn received his deed in January, 1941.

John Chinn acquired title to the west half of the west half of section 30 in 1899. Although not definitely described, John Chinn acquired title to another eighty acres of land which the evidence indicates was to the south of the land just described. Although not expressly stated, he mortgaged this land and the mortgage was foreclosed and a sheriff's deed was delivered to John Hancock Mutual Life Insurance Company and filed July 18, 1936. That company conveyed the lands to J. E. Frazer and wife by a deed recorded May 7, 1937, and by a deed recorded March 21, 1951, Sylvia Strait, one of the appellants, acquired title. At the oral argument in this court, in response to a question, it was stated that in none of the various instruments of title was there any grant of, or reservation or exception pertaining to, any right of way or any easement in favor of one tract and a burden on the other. Because of contentions later discussed, it is noted that at the trial in response to a question by the trial court, counsel for Chinn stated, "Our prescrip-

tive right actually started some time in—perhaps 40 years ago, and has continued over that 40-year period."

A. B. Chinn, testifying in his own behalf, stated relative locations of his lands and that of appellants and that he lived with his father on the land in section 30 until he was married in 1909 and moved on the land in section 25 and that he drove north on his east line and crossed what is now the Strait land between the two eighties; that there was a pretty good route across the Strait property, fenced on both sides and in substance that the land had been so used for over forty years; that no one had interfered with the route; that there had never been a gate at either end; that Staats, tenant on the Strait land while Frazers were the owners was going to put up gates and Chinn had told him if he put up a gate he would open it clear up, that he meant he would petition a road through there, that there is a trail west from his quarter across Thompson's land; that the road across the Strait property was closed last summer (1951) but the day and month was not stated. He further stated he had no conversations with Mr. and Mrs. Frazer about using the road in question but did ask her if he could take up the fence and grade the road and she refused. He also testified he had talked with Marvin Strait and tried to buy the acre of ground, apparently referring to the land in the claimed easement, and then offered to trade acre for acre. Witness and others testified at length as to the use of the roadway by Chinn over a long period of time, that it had a fence along it, some describing it as a good fence and others as not. Testimony concerning an effort to have a road laid out by the county after the controversy arose will not be detailed. Defendants' demurrer to this evidence was overruled.

Defendants' evidence, in substance, included the following: Staats, who was a tenant while Frazers owned the land in section 30, testified that at one time he put a gate across the lane (easement) and closed the lane for two weeks while he pastured wheat on the north eighty. Allie Frazer testified she purchased the Strait land in 1937 and shortly after Chinn asked Mr. Frazer if he was going to be barred from going across the place, that he wanted to go across the land and that "we" told him he could go across the place as long as we owned it and we got along. She further testified that while she lived on the place there was a gate over the road but she left it open so that Mr. Chinn could go back and forth; that she closed the gate a time or two for a day or two to confine some cows but Chinn had the right to go through there all of the time as she had

given Chinn that right. She further stated that after the death of her husband (date not shown) Chinn asked her to give him a deed to the road and she refused, telling him that as long as she lived there he could go through. Other witnesses testified to the use of the road and its condition.

At the conclusion of the evidence the cause was argued, following which the trial court made a statement deciding the cause, which statement is set out in full in the counter abstract. After first saying that it had to go back forty years to acquire a part of the material information bearing upon the situation, the trial court continued that as it understood an easement by prescription it is merely a right claimed and acquired through use for a period of fifteen years or longer and which is not permissive but adverse in character, and after referring to testimony about the common ownership of appellee's father, it found no difficulty in finding the road had been used by appellee since about 1909, and it further stated that about the only indication it could find in the testimony, over this long period of time, as to whether the use was adverse or permissive was Mrs. Frazer's testimony, which was not denied, that sometime after her husband's death she put a gate across there and showed her right to close the road and if there was no prescriptive right acquired before that time it indicated quite clearly that the use was merely permissive during or at the particular time. It then stated that there were many other features in the case and that when it took the whole period of forty-one or forty-two years into consideration it indicated to the court to the contrary and extensive reference was then made to evidence as to the situation existing prior to the year 1936, and it concluded there had been adverse possession and, as shown by the journal entry, rendered judgment as above mentioned. Reference is later made as to remarks of the court as to an easement of necessity.

In overruling the appellants' motion for a new trial, the trial court rendered a memorandum decision in which it stated it might be advisable to elaborate its previously announced decision. After again reviewing the facts as to ownership and use, it again stated that after Frazers acquired the land in section 30, in 1937, and during their ownership and after Mr. Frazer's death, Mrs. Frazer disputed appellee's right to a passageway but gave permission for its use by him. After discussing what constitutes adverse use the trial court stated that all the elements necessary were present unless it was that the use was not against the consent of the owner; that the appellants claimed that since appellee's father owned all of the

land, appellee's use was permissive and not adverse and no prescriptive right had been obtained. It stated there was no direct evidence upon that question but that from underlying facts it could draw inferences and conclusions and directing attention to facts occurring from 1909 down to 1937, it concluded the use was adverse.

We need not separately discuss appellants' contentions that the trial court erred in not sustaining their demurrer and that the judgment was contrary to the law and the evidence, nor need we elaborate upon what the law requires in order that a right of way may be procured by prescription or adverse use, for there is no dispute here, although our attention is directed to many authorities, but that an easement by prescription may be acquired by the exclusive and uninterrupted use and enjoymnt of the right for a period of time analogous to the time sufficient to acquire title to the soil by adverse possession, here fifteen years, and that a permissive use, exercised in subordination to the owner's claim and ownership, as distinguished from acquiescence, cannot result in an easement by prescription, however long continued.

It is entirely clear from the evidence that unless the adverse use contended for by the appellee commenced over fifteen years prior to at least July, 1937, there has been none following that date, for the evidence which the trial court credited, shows that appellee's use, during the time the lands now owned by appellants were owned by Frazers (1937-1951), was permissive in character and not adverse. The real question is whether appellee's use of the claimed easement from about 1909 ripened into a right within fifteen years thereafter or at least sometime prior to July in 1937. It is either admitted or shown by the evidence, as heretofore detailed, that John Chinn owned all of the lands involved until he was divested of title by the sheriff's deeds to which reference has been made and that during all of that time the appellee was a tenant of part, and perhaps for a time all, of the lands. During all of the time John Chinn was free to go where he would or to permit his tenant, the appellee, to go where he would, over any part of the lands owned by John Chinn. If it were possible for the tenant to claim adversely to his father, and that is not conceded, there is an utter failure of proof on anything that savors of adverse claim.

Investigation of the authorities bearing on the question leads to the conclusion that inasmuch as an easement by prescription may be acquired only by continued and uninterrupted use or enjoyment of the right claimed for the requisite period of time and must be

adverse to the owner of the land and, since a person may not claim adversely to himself, that a period of prescriptive right does not begin while the dominant and servient tracts are under the same ownership and control. The rule has been recognized in this state.

In *Ferguson v. Ferguson,* 106 Kan. 823, 189 Pac. 925, it was held:

"When lands, which were afterward severed by partition, were held as a single estate by the ancestral proprietor, no easement was created by his private use of a portion of his land as a roadway for the convenience of himself and family and his licensees." ( Syl. ¶ 1. )

In *Johnston v. City of Kingman,* 141 Kan. 131, 39 P. 2d 924, 98 A. L. R. 588, it was held:

"Where the owner of land claims to have a right by prescription to the flow of water from adjacent land, and it appears that both parcels of land belonging to the same person during substantially all the time that the claimed prescription right was being acquired, it is held the time when both parcels of land belonged to the same man should be excluded from the time when the right of prescription was being acquired, since no man can acquire an easement in his own lands." ( Syl. )

And see the annotation to the last citation.

In *Van Sandt v. Royster,* 148 Kan. 495, 83 P. 2d 698, to which reference is made for the facts, it was said:

"As an easement is an interest which a person has in land in the possession of another, it necessarily follows that an owner cannot have an easement in his own land. ( Citing cases. )" ( l. c. 499. )

See, also, 28 C. J. S. pp. 619, 658 [Easements, §§ 1, 14] and 17 Am. Jur. p. 980 [Easements, § 69]. And see *Stevens v. Dennett,* 51 N. H. 324, where it was held that the period during which the owner of the dominant tract was in possession as the tenant of the owner of the servient tract cannot be considered as part of the prescriptive period.

In our opinion, under the undisputed facts disclosed by the evidence, A. B. Chinn, as tenant of his father prior to July of 1937 could not and did not acquire any prescriptive rights in adjoining real estate owned by his father and since that date his use of the claimed right of way was under permission of the owner of the claimed servient real estate and was not adverse. In our judgment the trial court erred in its conclusion as stated in its remarks when deciding the cause and when ruling on the motion for a new trial that the whole chain of events could be considered in determining whether appellee's possession of the claimed right of way had been continuous and uninterrupted for a period of over fifteen years.

In what has been said we have not noted a claim by appellee

that he has an easement by implication arising from necessity. In his petition, appellee alleged he had an easement and right of way by adverse possession and nothing more. At the trial appellee offered evidence to show that the right of way afforded him his only means of access to a public road, and the court sustained an objection thereto on the ground that the petition presented no such issue. The record discloses no attempt to amend the petition. In its remarks when deciding the cause the trial court said that it seemed that at least during all of the father's ownership of the two tracts of land, there was probably an easement of necessity in appellee in that there did not appear to be any other practical route out from his place. It is noted however that the journal entry of judgment finds only that the allegations of the petition are true. There is nothing either by way of finding or otherwise that judgment was rendered for plaintiff on any theory of an easement implied from necessity. In its opinion, when ruling on the motion for a new trial, the court said that:

"The defendant in his brief states that at the beginning of the trial the court of its own motion ruled out evidence setting up a way of necessity. I have no recollection of such a ruling and I am unable to find anything pertaining thereto in the record. If perchance there was such a ruling or inference thereof, then I am of the opinion that it was erroneous and should not be adhered to."

and further that:

"If the plaintiff acquired a right to the passage way, and I am firmly of the opinion that he did, either by prescription or implied grant, or both, then he did so long before the foreclosure actions were instituted, and nothing that has occurred since has precluded that right."

The journal entry discloses merely that the motion for a new trial was denied. The judgment previously rendered was not modified or altered in any particular.

Apparently anticipating an argument by appellee, appellants in their brief have presented some argument that appellee may not now claim an implied easement arising from necessity. Appellee says that appellants' motion for a new trial did not challenge their right to an easement by necessity and that they cannot now be heard for the first time to say the trial court erred on this ground.

Our examination of the record, which is briefly set forth above, convinces us of two things. One is that no issue as to an easement implied from necessity was presented by the petition as drawn and no attempt was made to amend it. The offer of evidence objected to was properly rejected. There was no judgment that any such an

easement had been established. Even if it could be said the judgment did include an easement implied from necessity the motion for a new trial covered every phase of the decision and judgment. The trial court's remarks clearly indicate that if any easement implied from necessity arose, it was during the time all of the lands were owned by the father. We have held there could be no easement during that time. Under the circumstances of this case the question of an easement implied from necessity was not an issue in this case and we need not discuss authorities treating that subject, nor an inferred contention that appellee's right to have a right of way established is limited to the provisions of G. S. 1949, 68-117.

The judgment of the trial court is reversed and the cause remanded with instructions to render judgment for appellants.