630 P.2d 545

James E. BROWN and Rita J. Brown, husband and wife, and Billy C. Van Valkenburg and Naomi Van Valkenburg, husband and wife, Plaintiffs/Appellants,

v.

Henry W. WARE and Blanche E. Ware, husband and wife, and Donald F. Ameigh and Phyllis G. Ameigh, husband and wife, Defendants/Appellees.

No. 2 CA–CIV 3795.

Court of Appeals of Arizona, Division 2.

April 7, 1981.

Rehearing Denied May 20, 1981.

Review Denied June 23, 1981.

Waterfall, Economidis, Caldwell & Hanshaw, P. C. by Steven M. Cox, Tucson, for plaintiffs/appellants.

Silverstone & Stern by Maurice M. Stern, Tucson, for defendants/appellees.

BIRDSALL, Judge.

## OPINION

In 1947 appellant James E. Brown's parents purchased a five acre tract on the southwest corner of the intersection of Country Club and Bilby Roads in a subdivision of Pima County then on the outskirts of Tucson. They moved onto the property that same year locating their home near the center of the tract. The third day they

were there Mrs. Brown "hooked a bedspring to my car and hauled it up and down myself" to make a road north from the home to Bilby Road. The right to use that road as an easement was the subject matter of the lawsuit from which this appeal arises.

The Browns used the road as ingress and egress to their home. It was also used by their visitors, neighbors, children, including their own, delivery people, and others. It accommodated not only automobiles, but also horses, bicycles and foot traffic. It was the only driveway to the home. It had constant daily use.

The Browns continued to own all the acreage until 1951 when they sold a parcel not contiguous to the road to one of the appellant Brown's older brothers.[1] In 1954 they sold another parcel to a Mr. Battershell. This tract included the land over which the road had been maintained. The conveyance of this real property did not include a reservation of any easement for road. However, the Browns continued to use the road in the same manner as before the sale. There was no interruption.

A subsequent conveyance resulted in a Mr. Mason acquiring the north portion of the property purchased by Battershell. This sale included all the land used for the road. Mason then sold to appellees in 1974. No improvement has ever been made on appellees' property and the land used for the road has had no other use since 1947.

As a result of subsequent conveyances appellants Brown became the owners of the original homesite and appellants Van Valkenburg acquired a portion of the original five acre lot lying east of the homesite. The road leads north from each of their properties.

In 1965 Mr. Brown's business, Tucson Custom Sheet Metal, Inc., was moved to the original homesite and has operated there ever since. Brown's mother, however, still resides there.

The Van Valkenburgs made their home on their land in 1958 and continue to reside there.

Over the years the use of the road has obviously increased. The use includes the U. S. Mail delivery, city garbage collection, salesmen, and employees of Brown's business numbering in the hundreds.

Only two attempts have ever been made to interfere with the use of the land as a road. The first, in 1964, was by Mr. Mason and consisted of stringing a piece of barbed wire across it at the north end. This lasted overnite only, as the "egg lady" drove through it early in the morning, breaking the wire.

The second attempt was by appellee Donald F. Ameigh who placed debris on both the north and south ends completely obstructing passage on June 13, 1978. Mr. Brown cleared the debris away the next day.

The complaint in this case was filed June 22, 1978 against appellees because of this action by Ameigh. It prayed for the declaration of an easement over the 17.5′ roadway for the properties owned by appellants. The case was tried to the court and resulted in a judgment which recited in part:

"The court finds that the use of the land in question had its inception in the permission of the original owner, and thereafter through two successive owners, such use continued by Plaintiff and the general public through said successive owners' neighborly indulgence and therefore no 'prescription' ever took place."

The judgment was in favor of appellees (defendants in the trial court), denying any easement.

The only issue presented is whether the trial court's ruling can be affirmed under the facts of the case. Did the appellants, who own properties served by the road, have an easement by prescription for its use? We hold that they did.

Appellants also argue that the trial court could not base its decision on what it found to be permissive use unless such use had been pled as an affirmative defense. In

---

1. A different road out to Bilby Road was made and used for this property. The subsequent owners of this tract did not make use of the road which is the subject of this litigation.

view of our disposition of the first issue we need not consider whether this was error.

■ Appellants had the burden of clearly showing that their use of the road was adverse to the ownership rights of appellees and their predecessors in title. *Gusheroski v. Lewis*, 64 Ariz. 192, 167 P.2d 390 (1946). Such use must have continued uninterrupted for at least ten years. The statute of limitations for actions to recover land in the adverse and peaceable possession of another, A.R.S. § 12–526, fixes the time for acquiring by prescription an easement of use. *See Gusheroski v. Lewis*, supra. Where it is shown that the use is open, visible, continuous and hostile for the necessary period the use will be presumed to be adverse and in order to overcome such presumption the owner of the servient estate (appellees here) have the burden of showing that the use was permissive. *Id.* If the owner of the alleged servient property succeeds in showing the use was permissive then no easement by prescription can be found to exist. *See LaRue v. Kosich*, 66 Ariz. 299, 187 P.2d 642 (1947).

In the instant case, as noted, the trial court found that the use of the road was permissive. We are bound by this factual finding and must affirm the judgment if there is evidence to support it. *See LaRue v. Kosich*, supra.

■ During the period when the title to the entire tract was in one owner there could be no adverse use. *Scott v. Powers*, 140 Colo. 14, 342 P.2d 664 (1959); *Chinn v. Strait*, 173 Kan. 625, 250 P.2d 806 (1952). *See* Annot. 98 A.L.R. 591 (1935). Therefore the period of time necessary to establish adverse use cannot commence until at least 1954 when the land over which the road had been established was conveyed to Battershell. Then, for the first time since establishment of the road, there were two different estates, one claiming it was dominant

and the other servient. Furthermore, if any use of the road prior to that sale created any prescriptive right it was released by the conveyance which did not reserve the easement for the benefit of the remaining land. *La Plant v. Schuman*, 197 Ia. 466, 196 N.W. 280 (1923).

We hold that the starting point for the claimed ten years adverse period can be no earlier than 1954.

■ There is no evidence concerning any permission, implied, express, or otherwise, from Battershell for the use of the road. The evidence, however, is undisputed that the Browns and their successors in title continued to use the road commencing immediately after that sale. This use was clearly open, visible, and continuous to June 12, 1978 when appellees attempted to close the road.[2]

■ Mason was the succeeding owner of the servient land after Battershell. There is no evidence that he, at anytime, permitted the use. In fact, the only evidence is to the contrary. He attempted to close the road by stringing the barbed wire in 1964. When he sold to appellees in 1974 he told appellee Ameigh that he had tried to close the road at one time. Lastly there is no evidence of consent from appellees. The only evidence on this issue is contrary, i. e., their act of closing the road for 25 hours. Thus from 1954 to the commencement of this action, a total of some 24 years there has been continuous, open, hostile, and visible use of the road.

Although the trial court was correct that the original owner of the entire tract created the road there is no evidence showing permission by any owner of the servient land after it was first conveyed into separate ownership. We find that its use thereafter was adverse to the owners and that an easement by prescription was established.

---

**2.** The barbed wire incident in 1964 did not constitute an interruption since in order to find that the continuity of use has been broken the interruption must be substantial. An isolated instance of attempted interruption of the use resulting in no actual interruption and followed by no attempt to test the right will not as a matter of law necessarily destroy the presumption of a grant founded on a user in other respects sufficient. 28 C.J.S. Easements § 16c (1941).

The judgment is reversed and the cause remanded with directions to enter a judgment for appellants establishing the 17.5′ easement for road purposes.

HATHAWAY, C. J., and HOWARD, J., concur.