37 P.3d 554

Joseph A. RYAN and Helen B. Ryan,
Plaintiffs–Appellants,

v.

TANABE CORPORATION, a Japan cor-
poration, and Tanac Corporation, a Ha-
wai'i corporation, Defendants–Appellees,

and

Ichiro Sakakura, individually and as an
officer and/or agent of Tanabe Corpora-
tion and/or Tanac Corporation; Robert
M. Kaya Builders, Inc.; and Doe Defen-
dants 1–100, Defendants,

and

Robert M. Kaya Builders, Inc.,
Third–Party Plaintiff,

v.

L.T. Kuwasaki, Inc.; Tajiri Lumber, Ltd.;
Akamai Landscaping & Maintenance;
And Jayar Construction, Inc., Third–
Party Defendants

No. 21068.

Intermediate Court of Appeals of Hawai'i.

Sept. 7, 1999.

Reconsideration Denied
Sept. 27, 1999.

Certiorari Granted Nov. 2, 1999.

Certiorari Dismissed Jan. 11, 2002.

Joseph A. Ryan and Helen B. Ryan, on the briefs, plaintiffs-appellants pro se.

Jeffrey H.K. Sia, Stephen G. Dyer, and Gary S. Miyamoto (Ayabe, Chong, Nishimoto, Sia & Nakamura), Honolulu, and Don S. Kitaoka, on the brief, for defendants-appellees.

BURNS, C.J., WATANABE, and ACOBA, JJ.

Opinion of the Court by WATANABE, J.

In this appeal, Plaintiffs–Appellants Joseph A. Ryan (Joseph) and Helen B. Ryan (Helen) (collectively, the Ryans) contend that the Circuit Court of the First Circuit (the circuit court): (1) reversibly erred in granting summary judgment in favor of Defendants–Appellees Tanabe Corporation (Tanabe), a Japan corporation, and Tanac Corporation (Tanac), a Hawai'i corporation, (collectively, Defendants) and in ruling, as a matter of law, that the Ryans did not have an express or prescriptive easement over a portion of real property owned by Tanabe that had been used as a "common driveway" by the Ryans for over thirty years; (2) improperly "disregarded and refused to recognize the photographs that explicitly and/or implicitly demonstrate the existence, design, construction, use and maintenance of the hillside joint driveway easement as a surface water drainage on the natural slope of the hillside development"; (3) effectuated a judicial taking by granting summary judgment against the Ryans' prescriptive easement claim; (4) abused its discretion by granting, on less than twenty-four hours' notice, a motion for rehearing on its order denying Defendants' motion for summary judgment; and (5) violated the Ryans' right under the Fourteenth Amendment of the United States Constitution to be "protect[ed] by [the] duly ordained Governments, Municipal and State" by stamping its imprimatur on "the grand theft of [the Ryans'] property."

We find no merit to any of the Ryans' arguments. Accordingly, we affirm the Judgment filed by the circuit court on September 22, 1997.

## BACKGROUND

The Ryans own a parcel of real property located at 4005 Black Point Road (the 4005 property) in Honolulu, Hawai'i. Tanabe owns the adjoining parcel of real property situated at 4009 Black Point Road (the 4009 property). The common boundary line between the two properties runs approximately 180 feet from the front of the properties on Black Point Road to the back of the properties.

Helen first purchased the leasehold interest in the 4005 property from Mr. and Mrs. Burnham Kenison on March 6, 1965 (the Kenison Leasehold Conveyance). At that time, Bishop Estate owned the underlying fee simple title to the 4005 property and conditioned its approval of the sale to Helen on the execution of a "new Bishop Estate [fifty-five-year] lease" on the 4005 property. On June 14, 1965, Helen fulfilled said condition by executing an agreement with Bishop Estate to lease the 4005 property for fifty-five years, "together with the rights, easements, privileges and appurtenances thereunto belonging or appertaining" (the Bishop Estate Leasehold Conveyance).

It is undisputed that at the time Helen purchased the leasehold interest in the 4005 property, there was a driveway that provided access to both the 4005 and 4009 properties from Black Point Road. The first eighty feet of the driveway from Black Point Road (the common driveway) was about thirty feet wide and situated partly on the 4005 property and partly on the 4009 property. Thereafter, the driveway diverged into two driveways that were separated by a low rock wall and a hedge of shrubbery located on the 4005 property side of the boundary line between the properties. Defendants do not dispute the Ryans' contention that for many years, the common driveway was used to access both the 4005 and 4009 properties and that the Ryans and their neighbors on the 4009 property, as well as their respective guests, freely parked on both portions of the common

driveway. According to the Ryans, if vehicles of their neighbors' guests were parked on the common driveway, blocking access to their property, they would ask their neighbors to move the vehicles. A similar arrangement existed when the Ryans' neighbors needed to gain access to their property and the vehicles of the Ryans' guests were parked on the 4009 portion of the common driveway. Furthermore, according to the Ryans, Joseph blacktopped and maintained the common driveway.

On November 6, 1986, Helen purchased the fee simple title to the 4005 property from Bishop Estate. Helen subsequently conveyed the 4005 property to Joseph and herself as tenants by the entirety via a quitclaim deed dated June 15, 1990.

When Helen purchased the leasehold interest in the 4005 property in 1965, the leasehold interest in the 4009 property was owned by Mr. and Mrs. Jasper Holmes, who subsequently sold their interest to Mr. and Mrs. Lesley Murakami (the Murakamis) on December 22, 1975. On August 13, 1987, the Murakamis purchased the fee simple title to the 4009 property from Bishop Estate. Except for the descriptions of the properties conveyed, the deeds conveying the fee simple titles to Helen and to the Murakamis were identical. On the same day that the Murakamis purchased the fee simple title from Bishop Estate, they conveyed their fee simple interest to Eri's Co. Ltd. (Eri's), a Japan corporation, via a warranty deed. On October 5, 1989, Eri's conveyed its fee interest to Tanabe, which, in turn, conveyed its interest to Tanac on August 9, 1990. On September 30, 1994, Tanac transferred its interest in the 4009 property back to Tanabe, which allegedly owns eighty percent of Tanac.

In June 1990, the structures on the 4009 property were demolished by Third–Party Defendant L.T. Kuwasaki, Inc. On November 28, 1990, Roy Y. Takeyama (Takeyama), attorney for Tanac, informed the Ryans that effective December 3, 1990, his client would be constructing a new residence on the 4009 property. Takeyama informed the Ryans that although every effort would be made not to cause undue noise and disturbance to

the adjoining properties, the contractor would be doing some excavation that might affect the 4005 property. Takeyama assured the Ryans that in such event, the contractor would make repairs to restore their property to its original condition. Thereafter, Third–Party Defendant Tajiri Lumber, Ltd. cleared and grubbed the 4009 property, removing all vegetation that had been determined by a licensed surveyor to be located on the 4009 property. Beginning in December 1990, Defendant and Third–Party Plaintiff Robert M. Kaya Builders, Inc. (Kaya), as general contractor, and various other third-party defendants, as subcontractors of Kaya, began constructing a new residence on the 4009 property. As part of this construction, a hollow tile retaining wall was erected along the 4009 property side of the boundary line between the 4005 and 4009 properties (the Tanabe wall). The Tanabe wall essentially bisected the common driveway and then continued along the 4009 property side of the boundary line to the back of the two properties.

On January 15, 1991, the Ryans wrote to Takeyama, claiming that they owned a prescriptive easement over the entire common driveway, including the portion of the common driveway located on the 4009 property. Construction of the Tanabe wall and residence was completed sometime in 1992.

## PROCEDURAL HISTORY

On February 24, 1992, the Ryans brought the instant lawsuit against Tanabe, Tanac, and several other parties,[1] seeking damages for trespass, nuisance, negligence, intentional infliction of emotional harm, and violations of prescriptive rights. The Ryans filed a First Amended Complaint on December 18, 1995. With respect to the claim that their prescriptive rights had been violated, the Ryans alleged, in relevant part:

21. That [the Ryans] owned, enjoyed, used and maintained a prescriptive right and/or easement and right-of-way over a joint driveway [thirty] feet wide and for an an [sic] approximate length of [eighty] feet, and [the Ryans'] use of the prescriptive rights have been actual, open, notorious, hostile, and adverse to the ownership rights of [Defendants] and their predecessors in title and have continued for more than [twenty-five] years prior to June 1991, and [the Ryans] still own said prescriptive right but they are now wrongfully deprived of said prescriptive right, and further [the Ryans] also owned, used, and enjoyed prescriptive rights to air, light and morning sunshine along the southeasterly boundary of their lot.

22. Defendants wrongfully deprived [the Ryans] of their aforesaid property right by digging up the area comprising the right-of-way and constructing a high cement block wall down the middle of the joint driveway, thereby permanently depriving [the Ryans] of their prescriptive uses and/or easement, changing the natural flow of surface water, and making ingress and egress to [the Ryans'] property extremely hazardous to the public as well as to the [Ryans]. . . .

23. . . . [I]n violation of and destruction of [the Ryans'] prescriptive right to light and air, Defendants constructed a solid cement and stucco wall that is more than ten (10) feet high, and which said wall encroaches upon and is constructed partially on and/or under [the Ryans'] land on the southeasterly boundary, and further deprived [the Ryans] of light and air. This solid high wall causes the area between [the Ryans'] home and said high solid wall to become very hot and uncomfortable during the noon and afternoon of hot sunny days and causes the interior of [the Ryans'] home to become hot and uncomfortable. Said wall deprives [the Ryans] of the cooling tradewinds [the Ryans] have enjoyed from that side of their home. . . .

1. Plaintiffs–Appellants Joseph A. Ryan and Helen B. Ryan (collectively, the Ryans) also sued: the City and County of Honolulu; Ichiro Sakakura, individually and as an officer and/or agent of Defendants Tanabe Corporation (Tanabe), a Japan corporation, and/or Tanac Corporation (Tanac), a Hawai'i corporation; Shigenori Suzuki, individually and as an officer and/or agent of Tanabe and/or Tanac; Roy Y. Takeyama, individually and as an officer and/or agent of Tanabe and/or Tanac; Robert M. Kaya, individually and as an officer and/or agent of Robert M. Kaya Builders, Inc.; Robert M. Kaya Builders, Inc.; and Doe Defendants 1–100.

On April 30, 1996, the Ryans executed a settlement agreement, wherein the Ryans, in exchange for consideration, agreed to dismiss all claims against all parties with prejudice, except for the Ryans' prescriptive easement claim against Defendants. The settlement agreement defined "claims" and "prescriptive easement claim" as follows:

1.4 *Claims:* The term "claims" as used in this [partial settlement] agreement refers to *all claims,* demands, damages, actions or causes of action *whatsoever* including all intentional, reckless, wanton, willful or punitive claims, *which [the Ryans] now have or may have in the future, whether known or unknown, and whether anticipated or not,* resulting from, arising out of, or to arise out of, connected with, directly or indirectly with "the construction" and/or claims contained in "the lawsuit"; with the exception of [the Ryans'] claim for a prescriptive easement in their favor running over that portion of [the 4009 property], which, prior to the construction, was part of an alleged joint driveway serving both [the 4005 and 4009 properties].

1.5 *Prescriptive Easement Claim:* The term "prescriptive easement claim" as used in this agreement refers to [the Ryans'] claim of a prescriptive user easement or right to the continuing use of the alleged joint driveway that existed at the site prior to the construction of the "Tanabe wall".[2]

(Some emphases added.)

Thereafter, on May 15, 1996, a stipulation signed by all the parties was filed, dismissing with prejudice all the Ryans' claims against all the parties "with the exception of [the Ryans'] claim of a prescriptive user easement or right to the continuing use of the alleged joint driveway that existed at the site prior to the construction of the [Tanabe wall]." The stipulation explicitly provided that *"[o]nly the prescriptive easement claim remains."* (Emphasis added.)

On November 18, 1996, Defendants moved for partial summary judgment with respect to the Ryans' prescriptive easement claim on grounds that: (1) prior to 1986, the fee simple title to both the 4005 and 4009 properties was owned by Bishop Estate, and the use by occupants of properties under common ownership cannot be deemed adverse as a matter of law; (2) the undisputed record reflects that the Ryans' use of the common driveway was not adverse but, rather, was pursuant to a neighborly accommodation or permissive use; and (3) there is no evidence that the Ryans provided notice to any neighbor who held any interest in the 4009 property that the Ryans were adversely or hostilely using the 4009 portion of the common driveway.

At a January 3, 1997 hearing on the partial summary judgment motion, Helen referred the circuit court motions judge to photographs which allegedly "illustrate[d] the physical situation." The following colloquy ensued:

THE COURT: *I have seen the photographs.*

[HELEN]: You have seen the photographs.

THE COURT: I don't think that's necessary.

The photographs and this pivotal situation of the property doesn't—I think this motion was heard on this particular issue, the issue of common ownership issue. What it means to your claim of prescriptive easement.

(Emphasis added.)

Ultimately, the circuit court motions judge denied Defendants' partial summary motion but expressly stated that the denial was without prejudice to Defendants raising the common ownership issue with the trial judge. In denying the motion, the motions judge explained:

The court does find that the compelling issue is regarding the issue of common ownership. And whether or not under the circumstances common ownership would defeat a claim of a prescriptive easement and while it does make sense that a prescriptive easement should be defeated under the normal fee simple situation, we

---

**2.** The partial settlement agreement further provided that the "Tanabe wall" refers "to only that portion of the wall separating 4009 Black Point Road and [the Ryans'] property at 4005 Black Point Road."

have a lease fee situation in this case and the court is not entirely satisfied that the legal reference by [Defendants indicate] that under these circumstances the joint ownership theory applies. . . .

For those reasons the court will deny the motion for summary judgment. And perhaps you will be able to convince the trial judge that a legal basis for your common ownership theory applies in this case.

On January 9, 1997, Defendants filed a motion for rehearing on the circuit court's order denying the motion for partial summary judgment (the rehearing motion) and an ex parte motion to shorten time for a hearing on the rehearing motion (ex parte motion). The circuit court granted the ex parte motion and set the hearing on the rehearing motion for the next day, January 10, 1997. This case had previously been set for trial on January 7, 1997.

During the hearing on the rehearing motion, the circuit court asked Joseph to "point out to anything in [the] lease with Bishop Estate that allows you the right to assert an adverse prescriptive right claim as against them[.]" Joseph responded, "[T]here's nothing in the lease that says, Bishop Estate hereby allows you to assert adverse possession claims against Bishop Estate." However, Joseph further explained:

I think that when you look at the contract to sell this residential leasehold with all its appurtenances and uses to [Helen], and you have Bishop Estate approving it, then you have Bishop Estate acquiescing in the sale and the transfer. I don't think Bishop Estate could have come at any time—at any time while [Helen] was in possession and say now Bishop Estate is going to put a wall down this driveway. . . .

And then when Bishop Estate transferred all [the fee to the 4005 property] to [Helen], it transferred the use that she had and the appurtenances that she had to the adjoining section—to the other part of the joint driveway. And then it also burdened her driveway with the use of [the 4009 property], the other side. And when it sold and conveyed what it had of its rever-. sionary interest about a year or so later to [the 4009 property] as an "as is", it bur-

dened [the 4009 property], but it also gave [the owner of the 4009 property] the right and the use of all of the driveway.

The circuit court ultimately rejected Joseph's arguments, reasoning that

the [c]ourt believes that all of the [Ryans'] rights and interests in this [sic] properties are defined by the lease entered into with Bishop Estate.

And as [Joseph] has indicated and as the [c]ourt has concluded, there is nothing in the lease that allows a tenant, . . . such as the [Ryans], to assert an adverse claim such as a prescriptive easement as against the lessor. And in this case a lessor of both the dominant and servient estates.

And under the circumstances[,] the [c]ourt feels that it is compelled to grant the [m]otion for [s]ummary [j]udgment inasmuch as I think the law is clear that where there is common ownership of both the dominant and servient estates[,] there cannot be an adverse claim.

And in this case[,] the dominant and servient estates were not separated until 1986 when they were conveyed in fee both to [Defendants' predecessors in interest] and to [the Ryans]. And the claim of an adverse prescriptive easement could only begin to run from 1986.

And so the period—the prescriptive period would not expire until the year 2006[,] which is a [twenty-year] prescriptive period.

And so[,] based on those findings and conclusions then[,] the [c]ourt will grant the motion.

The circuit court filed an order granting Defendants' motion for partial summary judgment as to the Ryans' prescriptive easement claim on April 17, 1997 and entered a final judgment in favor of Defendants on September 22, 1997. This appeal by the Ryans followed.

## STANDARDS OF REVIEW

### A. Summary Judgment

When reviewing the circuit court's award of summary judgment, this court employs the same standard applied by the circuit court.

*Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.

*Id.* (citations and internal quotation marks omitted).

### B. *Motion for Rehearing*

■ Pursuant to Hawai'i Rules of Civil Procedure Rule 59(e), a motion for rehearing is treated as a motion for reconsideration. *Fukunaga v. Fukunaga,* 8 Haw.App. 273, 277 n. 4, 800 P.2d 618, 621 n. 4 (1990). Therefore, this court employs the abuse of discretion standard upon review of a motion for rehearing or reconsideration. *Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, Ltd.,* 76 Hawai'i 277, 290, 875 P.2d 894, 907, *amended on reconsideration,* 76 Hawai'i 453, 879 P.2d 558 (1994). An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded the rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 114, 839 P.2d 10, 26, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992).

## DISCUSSION

### A. *Whether an Express Easement in the 4009 Property Portion of the Common Driveway Was Conveyed to Helen*

■ The Hawai'i Supreme Court has stated that title to an easement may be acquired either by grant or by prescription. *Lalakea v. Hawaiian Irrigation Co.,* 36 Haw. 692, 706 (1944). Title by grant "is by special permission of the owner of the fee," and "[t]he grant itself is the best evidence of title[.]" *Id.* The Ryans contend that an ease-

ment to the 4009 property portion of the common driveway was expressly granted to Helen by the Kenison Leasehold Conveyance contract, the Bishop Estate Leasehold Conveyance contract, and the fee simple deed to the 4005 property (collectively, the conveyance documents).

As discussed above, however, the Ryans entered into a partial settlement agreement and stipulated to dismiss all claims against all parties except the prescriptive easement claim against Defendants. Consequently, the Ryans have waived their right to appeal the circuit court's decision that no express easement to the 4009 property portion of the common driveway was granted to Helen.

Even if the issue had been preserved, however, we conclude, based on our review of the conveyance documents, that no express easement over the 4009 property portion of the common driveway was ever conveyed to Helen.

### B. *Whether the Circuit Court Correctly Ruled that Bishop Estate's Unity of Fee Simple Ownership of the 4005 and 4009 Properties Precluded the Ryans' Prescriptive Easement Claim from Accruing During the Period of Helen's Lease*

#### 1.

■ According to the Hawai'i Supreme Court, title to an easement by prescription may be acquired "by use and occupation for the period prescribed by law adverse to the true owner of the fee." *Lalakea,* 36 Haw. at 706. The elements that must be proved to establish a prescriptive easement are the same elements "necessary for acquisition of title by adverse possession[.]" *Tagami v. Meyer,* 41 Haw. 484, 487 (1956). That is,

> the use and enjoyment must be adverse, under a claim of right, continuous and uninterrupted, open, notorious and exclusive, with the knowledge and acquiescence of the owner of the servient tenement and must continue for the full prescriptive period.
>
> A permissive use of a right of way will not create an easement, however long continued.

312

*Id.* at 487–88 (citation and quotation marks omitted). The prescriptive period to establish adverse possession of real property in Hawai'i is "not less than twenty years." Hawai'i Revised Statutes (HRS) § 669–1(b) (1993).

■ The general rule is that the prescriptive period does not begin to run until the unity of ownership of the dominant and servient tracts is severed. *See Hidalgo County Water Control & Improvement Dist. v. Hippchen*, 233 F.2d 712, 714 (5th Cir.1956) (holding that "for the creation of an easement both a dominant and a servient estate are required"); *Brown v. Ware*, 129 Ariz. 249, 630 P.2d 545, 547 (App.1981) (holding that "[d]uring the period when the title to the entire tract was in one owner there could be no adverse use"); *Walker v. Witt*, 4 Ill.2d 16, 122 N.E.2d 175, 177 (1954) (stating that "[s]ince it is fundamental that one can not [ (sic) ] have an easement in his [or her] own land, an easement of one part with respect to another does not arise, if at all, until there is a severance of ownership"); *Chinn v. Strait*, 173 Kan. 625, 250 P.2d 806, 810 (1952) (acknowledging prior case law that "[w]hen lands, which were afterwards severed by partition, were held as a single estate by the ancestral proprietor, no easement was created by his [or her] private use of a portion of his [or her] land as a roadway for the convenience of himself [or herself] and family and his [or her] licensees" (internal quotation marks omitted)); *Gardner v. Maffitt*, 335 Mo. 959, 74 S.W.2d 604, 606–07 (1934) (holding that as long as a subdivision tract remains in one ownership, the owner has a "perfect right to convey in any manner fairly agreed upon" and creates no easement or restriction by rearranging the building line restrictions in the subdivision until a severance of title has occurred).

This rule is grounded in the well-established principle that one cannot claim adversely to his or her own interest. 25 Am. Jur.2d *Easements and Licenses* § 49, at 619 (1996); 28A C.J.S. *Easements* § 31, at 210 (1996). As the Fifth Circuit Court of Appeals explained in *Hidalgo, supra:*

[I]t is elementary that the dominant and servient estates must be held by different owners, for no person can have an easement in his [or her] own property ...;

... A person cannot have an easement in his [or her] own land since all the uses of an easement are fully comprehended in his [or her] general right of ownership. It follows that no easement exists so long as there is a unity of ownership of the property involved.

*Hidalgo*, 233 F.2d at 714 (citations and internal quotation marks omitted).

■ It is also a well-established principle that "[o]ne in possession of land as a tenant ... for years cannot acquire for himself [or herself] by prescription an easement of way over the lands of another." 25 Am. Jur.2d *Easements and Licenses* § 46, at 617 (1996). Instead, the "possession of a tenant inures to the benefit of his [or her] landlord and constitutes the possession of the landlord for the purpose of securing to the latter the benefits of adverse possession and the benefit of the bar of the statute of limitations." *In re Sing Chong Co.*, 37 Haw. 49, 52 (1945).

The Connecticut Supreme Court of Errors articulated the rationale underlying this principle in *Deregibus v. Silberman Furniture Co.*, 121 Conn. 633, 186 A. 553 (1936). In that case, the supreme court held that the plaintiff, who became the fee simple owner of property which he had once leased, could not tack on the time that he, as a tenant, claimed to have adversely used as a right of way over his neighbor's property in calculating whether he had met the statutory prescriptive period. *Id.* at 555–56. In so holding, the supreme court set forth the following rule:

[O]ne who is in possession of land as a tenant at will or for years cannot prescribe in himself [or herself]. 19 C.J. 876, § 20. The rule and its reason have been thus stated: "If the defendants, or those under whom they claim, were in possession as tenants for life, for years, or at will, they could not prescribe in themselves by reason of the imbecility of their estates. *A prescription in a que estate must always be laid in the person who is seized in a fee simple.* 2 Blk.Com. 265." Perley v. Hilton, 55 N.H. 444, 447. *The plaintiff, therefore, as tenant, could only have claimed to*

*use the way as appurtenant to the estate in fee in his lessors.*

*Id.* at 555 (emphases added).

Similarly, in *Risi v. Interboro Indus. Parks, Inc.,* 99 A.D.2d 466, 470 N.Y.S.2d 174 (N.Y.App.Div.1984), the Second Department of the Appellate Division of the New York Supreme Court rejected an adverse possession claim advanced by a tenant who asserted ownership of a plot of land adjacent to his leasehold estate by virtue of maintaining a garden on said plot for the duration of the prescriptive period. *Id.* at 175–76. In reaching this determination, the court relied upon the following principles:

> *It has long been the rule that the possession by a tenant of lands adjoining the demised premises is to be considered the possession of the landlord and cannot be adverse to the landlord's interests.* . . . The result of this rule is that a tenant may acquire a permanent interest in adjacent lands belonging to third persons for use with the leased property which will enure to the tenant's benefit during the tenancy. However, on its expiration, the land so acquired appertains to the landlord. . . . *The same principle has been held applicable to adjacent lands owned by the landlord of a tenant who takes possession of those lands* (see *Bedlow v. New York Floating Dry Dock Co.,* 112 N.Y. 263, 282–283, 19 N.E. 800[, 809 (1889) ] ). *Plaintiff is thus precluded from showing that he has taken title by adverse possession to land adjacent to his tenancy because his interest is, as a matter of law, regarded as not hostile to that of his landlord.*

*Id.* at 176 (emphases added).

■ In this case, prior to 1986, Bishop Estate owned the fee simple title to the adjoining 4005 and 4009 properties. Consequently, Helen, as a lessee, was precluded from acquiring a prescriptive easement over the 4009 property portion of the common driveway during the period of her lease. 25 Am.Jur.2d *Easements and Licenses* § 46, at 617. Since the earliest point at which the Ryans' alleged prescriptive easement could begin to accrue was 1986, the year that Helen purchased the fee on the 4005 property, the Ryans' claim fails to meet the twenty-

year prescriptive period set forth in HRS § 669–1(b).

Moreover, because Bishop Estate owned the fee simple interest in both the land that the Ryans claimed a prescriptive easement over and the land which the Ryans leased at the time the adverse claim began, the prescriptive easement claim by the Ryans would not inure to Bishop Estate's benefit since it was legally impossible for Bishop Estate to claim a prescriptive easement over a portion of its own property. Accordingly, the Ryans' contention that their prescriptive easement claim began to accrue during the term of their leasehold must fail as a matter of law. *See In re Sing Chong Co.,* 37 Haw. at 52; *Risi,* 470 N.Y.S.2d at 176; 25 Am.Jur.2d *Easements and Licenses* § 49, at 619.

2.

■ Relying on *Queen Emma Foundation v. Tingco,* 74 Haw. 294, 845 P.2d 1186 (1992), *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993), the Ryans urge us to conclude that in light of the unique history of residential ground leases in Hawai'i, they should be allowed to assert a prescriptive easement over the 4009 property portion of the common driveway for the period of Helen's lease. We decline to do so.

The precise issue in *Queen Emma Foundation* was whether, pursuant to HRS chapter 666, the summary possession statute, a fifty-five year, renewable residential ground lease that "anticipated a long-term relationship between lessor and [lessee], that enabled and required [lessee] to build [a residence] on the leased land[,]" could be canceled in a district court summary possession proceeding. 74 Haw. at 301, 845 P.2d at 1189. The supreme court concluded that the district court did not have jurisdiction over such actions:

> HRS chapter 666, the summary possession statute, was enacted to provide an expedient remedy to restore a landlord to the possession of his [or her] premises when it is clear that the tenant holds nothing more than a possessory interest in the property. When a long-term ground lease is involved, the lessee often holds more

than a possessory interest and the relationship between the landlord and tenant may be more complex. In the present case the district court remedy of summary possession is ill-suited to protect the rights and determine the obligations of all parties with an interest in these long-term leasehold estates.

74 Haw. at 304, 845 P.2d at 1190–91 (footnote omitted). In so holding, the supreme court observed:

The [Hawai'i s]tate legislature has recognized that Hawaii's [Hawai'i's] limited supply of land is controlled to a great extent by a few large landowners. HRS § 516–83(1) (1985). Some of these fee owners have chosen to lease their property under long-term leases resulting in a shortage of fee simple residential land. HRS § 516–83(2). Thus, many people . . . must accept long-term ground leases in order to acquire the land needed to build their homes. Consequently, long-term ground leases have evolved into sophisticated instruments that grant property rights beyond mere possession. For example, Hawaii [Hawai'i] residential leases often include a provision that permits lessees to mortgage and sell their leasehold estates, thereby implicating the interests of third parties when lessees mortgage or transfer their leasehold estates. In effect, lessees . . . have been granted leasehold title to real property by their lessor, which for commercial and other legal purposes, is *similar to fee simple ownership.*

*Id.* at 302, 845 P.2d at 1190 (emphasis added, footnote omitted). The supreme court recognized that the "lessee's interests are of limited duration and require the payment of rent to the leased fee owner." *Id.* at 302 n. 10, 845 P.2d at 1190 n. 10. However, because a lessee's leasehold estate may be readily mortgaged, condemned, or assigned, *id.*, and because "title to real estate is in question[,]" the supreme court held that "a lessor seeking to dispossess a long-term lessee must file his [or her] complaint in circuit court[.]" *Id.* at 303, 845 P.2d at 1190.

The *Queen Emma* court was concerned that lessees under a long-term residential ground lease be afforded due process protec-

tion before their leases could be canceled. The supreme court did not, however, equate a long-term residential interest to fee simple ownership. And in our view, it would defy logic and be contrary to the vast body of common law that has evolved over the years to conclude that a long-term residential leaseholder may assert a prescriptive easement over adjoining property which the lessee's landlord still owns in fee simple.

3.

Finally, the Ryans argue that when Bishop Estate conveyed the fee simple title to the 4005 and 4009 properties to different possessors, the "quasi-easement" which they enjoyed in the common driveway "ripened" into a prescriptive easement by implication. In other words, the Ryans claim that they are entitled to an implied easement over the 4009 property portion of the common driveway.

The record reflects, however, that the Ryans did not assert an implied easement claim in their first amended complaint. Additionally, as discussed previously, the Ryans entered into a partial settlement agreement and filed a stipulation to dismiss, pursuant to which all of their claims against all parties were dismissed with prejudice, except for their prescriptive easement claim against Defendants. Accordingly, we decline to address the Ryans' implied easement claim.

C. *Whether the Circuit Court Erred in Disregarding Certain Photographs*

The Ryans allege that the circuit court committed reversible error when it "disregarded and refused to recognize the photographs that explicitly and/or implicitly demonstrate the existence, design, construction, use and maintenance of the hillside joint driveway easement as a surface water drainage on the natural slope of the hillside development." However, a review of the record reveals that the circuit court did, in fact, review the photographs but determined that said photographs were not relevant to the legal issue of whether common ownership of the dominant and servient parcels precluded the Ryans' prescriptive easement claim. Accordingly, the Ryans' claim that the circuit

court erred in disregarding said photographs lacks merit.

### D. Whether the Circuit Court Abused its Discretion by Granting Defendants' Motion for Rehearing

■ According to the Ryans, the circuit court reversibly erred when it granted (1) Defendants' motion for rehearing on the circuit court's order denying Defendants' motion for summary judgment against the Ryans' prescriptive easement claim and (2) Defendants' ex parte motion to shorten time to hear said rehearing motion. The circuit court scheduled the rehearing motion for January 10, 1997, the day after Defendants filed the rehearing motion. The record indicates, however, that the Ryans had notice that Defendants would probably ask for a rehearing before the trial judge assigned to the case, since the motions judge expressly invited Defendants to do so. Additionally, the Ryans were able to file a memorandum in opposition to Defendants' rehearing motion within hours after the rehearing motion was filed.

Under the circumstances, we cannot conclude that the circuit court exceeded the bounds of reason or disregarded the rules or principles of law or practice to the substantial detriment of the Ryans when it granted Defendants' motion for rehearing. The rehearing served to clarify the dispositive issue of whether, as a matter of law, common ownership of the dominant and servient estates in fee simple precluded a prescriptive rights claim. If the Ryans were unduly pressed for time to prepare for the rehearing, the appropriate remedy was to request a continuance. There is no indication in the record that the Ryans attempted to do so.

### E. Whether the Circuit Court's Final Judgment Granting Defendants' Motion for Partial Summary Judgment Constituted a Judicial Taking

The Ryans also allege that the grant of partial summary judgment in favor of Defendants on the Ryans' prescriptive easement claim amounted to a judicial taking. According to the Hawai'i Supreme Court,

Under the judicial taking theory, when a judicial decision alters property rights, the decision may amount to an unconstitutional taking of property. However, the judicial taking theory is "by no means a settled issue of law." Assuming, without deciding, that the theory is viable, a judicial decision would only constitute an unconstitutional taking of private property if it "involved retroactive alteration of state law such as would constitute an unconstitutional taking of private property."

*Public Access Shoreline v. Hawai'i County Planning Comm'n*, 79 Hawai'i 425, 451, 903 P.2d 1246, 1272 (1995), *cert. denied*, 517 U.S. 1163, 116 S.Ct. 1559, 134 L.Ed.2d 660 (1996) (brackets and citations omitted).

In this case, the Ryans' argument appears to be that the circuit court retroactively altered state law when it initially denied Defendants' motion for partial summary judgment as to the Ryans' prescriptive easement claim, then granted Defendants' motion for rehearing and upon rehearing, granted partial summary judgment in Defendants' favor as to the prescriptive easement claim.

If we were to accept the Ryans' construction of the judicial takings theory, a judicial takings claim would arise every time a trial court, upon further evaluation of the facts and applicable law, elected to change its mind on a motion affecting property rights. Such a construction defies common sense, and we reject it as untenable.

### F. Whether the Circuit Court Violated the Ryans' Asserted Fundamental Right to be Protected by the Government Under the Fourteenth Amendment of the United States Constitution

The Ryans further claim that the circuit court violated their fundamental right under the Fourteenth Amendment of the United States Constitution to be "protect[ed] by [the] duly ordained Governments, Municipal and State" when the circuit court ratified "the grand theft of [the Ryans'] property." This assertion is premised on the improper grant of Defendants' summary judgment motion. Inasmuch as we have concluded that the circuit court did not err in granting

Defendants' motion for partial summary judgment against the Ryans' prescriptive easement claim, we likewise reject this argument as meritless.

## CONCLUSION

For the foregoing reasons, we affirm the Judgment entered by the circuit court on September 22, 1997.